FILED

DEC 1 2 2007
NR

DEC 1 2 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| LORI SUTTON, | 07CV 6979 |
| Plaintiff, | JUDGE KENNELLY |
| | MAGISTRATE JUDGE BROWN |
| v. | |
| SKENDER CONSTRUCTION COMPANY, | Jury Trial Requested |
| Defendant. | |

## COMPLAINT

NOW COMES Plaintiff, LORI SUTTON, by and through her counsel, LISA KANE of LISA KANE & ASSOCIATES, P.C., and complaining of Defendant, SKENDER CONSTRUCTION COMPANY, states as follows:

### PRELIMINARY STATEMENT

1.     This is an action seeking redress for the violation of rights guaranteed to Plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq and by the laws of the State of Illinois.  Plaintiff seeks mandatory injunctive relief and damages to redress Defendant's discriminatory employment practices.

### JURISDICTIONAL STATEMENT

2.     Jurisdiction of the court is invoked pursuant to 28 U.S.C. §§ 1343(a)(3) and (4) and 28 U.S.C. § 1331 to secure protection of and to redress deprivation of rights secured by 42 U.S.C. § 2000e et seq.  Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.  With respect to Plaintiff's state law claims, this Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367.

## VENUE

3.    Venue is proper under 28 U.S.C. §1391 (b)(1) and (2).

## PARTIES

4.    Plaintiff, LORI SUTTON, is a female United States citizen who resides in Illinois.

5.    Defendant, SKENDER CONSTRUCTION COMPANY, is a corporation properly recognized and sanctioned by the laws of the State of Illinois, and at all times did and continues to do business in Illinois. Defendant is subject to the jurisdiction of the Court as an employer within the meaning of 42 U.S.C. § 2000e(b), as Defendant has continuously and does now employ more than fifteen (15) employees and is engaged in an industry that affects commerce.

## PROCEDURE

6.    Plaintiff filed a Charge of Discrimination against Defendant with the Equal Opportunity Commission ("EEOC") on October 16, 2007. The EEOC issued Plaintiff a Notice of Right to Sue on her charge of discrimination on December 5, 2007, which was received on December 6, 2007. The Notice of Right to Sue entitles Plaintiff to initiate a civil action in the appropriate forum within ninety (90) days of the receipt of said Notice. Plaintiff has initiated this action within said ninety (90) day period.

## COUNT I – TITLE VII - SEXUAL HARASSMENT

7.    Paragraphs one (1) through six (6) are incorporated by reference as if fully set out herein.

8.    Plaintiff began working for Defendant as a Carpenter on May 31, 2004. Throughout her nearly three and a half (3.5) years of employment, Plaintiff has performed to Defendant's reasonable expectations, as evidenced by her excellent performance evaluations and promotion to foreman.

2

9.      Throughout her employment, Plaintiff has been the only female Carpenter consistently employed by Defendant, and on the majority of job assignments she will be the only female Carpenter assigned to the project. Upon Plaintiff's promotion, she became the only female foreman employed by Defendant.

10.     Throughout her employment, the predominately male management and employees of Defendant have subjected Plaintiff to a continuous campaign of hostile, abusive, and sexually harassing conduct. Examples of such conduct follow.

11.     In 2005, Defendant's foreman, Dennis Law, who was assigned to supervise Plaintiff, made numerous sexual advances towards Plaintiff, including but not limited to, taking his shirt off during work in order to ask Plaintiff "if he looked good for his age" and telling Plaintiff that he would get her name tattooed on him to demonstrate his love.

12.     Based on Foreman Law's continued harassment, Plaintiff complained to Jim Lowe, Superintendent, of Law's sexually harassing behavior. Despite her complaints, Superintendent Lowe refused to take any action to substantively discipline Law or address Plaintiff's reports.

13.     As Defendant failed to take any action to address her concerns, Foreman Law continued to make sexual advances towards Plaintiff.

14.     In April 2005, Foreman Law presented a letter written by his wife to Plaintiff. The wife's letter, which requested that Plaintiff read it out loud to Foreman Law, informed Plaintiff that Law had told his wife that he was in love with Plaintiff and that he and Plaintiff shared strong sexual feelings towards each other.

15.     The April 2005 letter from Foreman Law's wife to Plaintiff also included a list of "demands" that Law asked his wife to accept, including but not limited to:

a. allowing Law and Plaintiff to take rides on his motorcycle;

3

b. agreeing to have a "three-way" relationship with Plaintiff; and

c. allowing Law to add Plaintiff's name to his tattoo that also included the initials of his children.

16.     The letter concluded by emphasizing that due to all the pain Plaintiff and Foreman Law had caused his wife, the wife lost "control" and "stab[bed]" Law.

17.     Following her receipt of the letter, Plaintiff again complained to Superintendent Lowe, who once again failed to take any substantive action despite being informed of the disturbing letter sent by Foreman Law's wife.

18.     Despite Plaintiff's complaints, Defendant ultimately promoted Foreman Law to the position of Superintendent.

19.     In addition to Foreman Law's continued sexual advances, throughout her employment, Dan Murphy, Field Superintendent and one of Plaintiff's managers, also made numerous sexual advances and displayed overtly sexual behavior towards Plaintiff, including but not limited to, asking Plaintiff out on numerous dates despite her repeated denials and lewdly staring at Plaintiff while she was working.

20.     On the occasions that Field Superintendent Murphy asked Plaintiff out on dates, he often implied that he could make Plaintiff's job easier by placing her into an office position, despite the fact that Plaintiff had no desire to leave her job in the field for administrative work.

21.     Comporting with his continued sexual advances, in December 2006, Field Superintendent Murphy approached Plaintiff and offered her a necklace. Plaintiff attempted to refuse the gift, but Field Superintendent Murphy continued to coerce Plaintiff, causing her to accept the necklace to avoid escalating the situation. Murphy subsequently gave Plaintiff a Valentine's Day card in 2007 signed "Love Dan."

4

22.     Plaintiff attempted to address Murphy's repeated advances and harassing behavior with Eric Munich, a newly appointed Field Superintendent, but Munich indicated he was not interested in hearing such complaints.

23.     As a result of the sexually harassing environment fostered by Defendant's predominately male employees, Plaintiff was forced to endure numerous other extremely graphic and sexually harassing acts by other employees of Defendant.

24.     The aforementioned acts and omissions of Defendant constitute unlawful harassment against Plaintiff because of her sex, female, in violation of the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.

25.     As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered damages, including but not limited to, lost and foregone wages and benefits, and physical and emotional harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, LORI SUTTON, prays for judgment against Defendant and respectfully requests that this Court:

A.     Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff under appropriate Federal Law;

B.     Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which unlawfully discriminates on the basis of sex;

C.     Order Defendant to make whole LORI SUTTON by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D.     Grant Plaintiff actual, consequential, compensatory, punitive and any other damages

that the Court may deem appropriate against Defendant;

E.      Grant Plaintiff her attorney fees, costs, disbursements; and

F.      Grant Plaintiff such further relief as the Court deems necessary and proper in the public interest.

## <u>COUNT II – TITLE VII - GENDER DISCRIMINATION</u>

26.     Paragraphs one (1) through nine (9) are incorporated by reference as if fully set out herein.

27.     In September 2006, following a successful tenure as a Carpenter, Defendant promoted Plaintiff to the position of foreman.

28.     As part of the promotion, Defendant compensated Plaintiff at $1.00 over scale and gave Plaintiff a phone to use for work.

29.     In contrast to Plaintiff, who performed the same duties and had the same responsibilities, Defendant compensated its male foreman significantly higher than Plaintiff, despite the fact that, in many instances, Plaintiff received additional work and performed additional duties at the request of Defendant's clients that her male counterparts did not receive or perform.

30.     While Plaintiff was only compensated at $1.00 over scale, Defendant compensated male foreman at $3.00 over scale and provided other benefits, such as a $300/month stipend for gas and transportation expenses. On information and belief, the following male foreman received higher compensation than Plaintiff: Sam Miskiewicz, Phil Manno, Dennis Law, Dan Murphy, Frank Arnold, Pete Andre, and Steve Thorne.

31.     In December 2006, after learning of the disparate treatment, Plaintiff made an initial complaint to Dan Murphy, Field Superintendent and Plaintiff's supervisor, and asked him why she did not make the same salary as Defendant's male foremen.  In response, Murphy stated that he

6

would investigate her complaint. Plaintiff repeated her complaint to Murphy on several subsequent occasions to no avail. On information and belief, Murphy did not investigate Plaintiff's complaint and took no action to rectify the unequal compensation.

32.     After not receiving any substantive action regarding her complaints, in August 2007 Plaintiff informed Mr. Murphy, now demoted to Foreman, that she intended to make a complaint to Eric Munich, the new Field Superintendent.   In response, Mr. Murphy attempted to dissuade Plaintiff from contacting Field Superintendent Munich by stating "I wouldn't do that if I were you. He is firing people left and right."

33.     Despite Mr. Murphy's objections, on the following day, Plaintiff made a complaint to Field Superintendent Munich about the disparate treatment. Rather than address her complaints, Munich laughed off Plaintiff's reports and gave no further response.

34.     As Defendant continued to refuse to address Plaintiff's complaints, at the end of August 2007, Plaintiff continued to make reports to higher levels in Defendant's organization and contacted Jerry Ball, Chief Financial Officer, to make a complaint about her unequal pay.

35.     Plaintiff informed CFO Ball that she had made formal complaints to her supervisors, who failed to rectify her lesser compensation in comparison to her similarly situated male co-workers. In response, CFO Ball acknowledged that he knew Defendant had compensated her less than male employees, commended Plaintiff for her excellent work, and reassured Plaintiff that he would resolve the disparate treatment.

36.     After her conversation with CFO Ball, Plaintiff continued to complain to Field Superintendent Munich about the unequal pay.

37.     Finally, in September 2007, in response to Plaintiff's complaints, Defendant provided Plaintiff with a check for $1,000.00, purportedly to resolve her complaints of disparate treatment.

7

However, the amount of the check was still substantially insufficient to compensate Plaintiff at the level Defendant paid its male foreman.

38.     As the check still compensated Plaintiff lower than her similarly situated male counterparts, Plaintiff again complained to Field Superintendent Munich regarding the amount of the payment. In response, Munich informed Plaintiff that he had discussed the issue with Joe Skender, President, who had gave the order to "give her something."

39.     Plaintiff further complained to Lisa Krizic, Human Resources Manager, regarding the amount of the check and Defendant's continued failure to compensate her at the level provided to male foremen, to no avail.

40.     Any reasons proffered by Defendant for failing to properly compensate Plaintiff are pretext for discrimination, as demonstrated by, *inter alia*, Plaintiff's performance evaluations and requests by Defendant's clients for Plaintiff to be the foreman on their projects.

41.     The aforementioned acts and omissions of Defendant constitute unlawful discrimination against Plaintiff because of her gender, female, in violation of the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.

42.     As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered damages, including but not limited to, lost and foregone wages and benefits, and physical and emotional harm.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, LORI SUTTON, prays for judgment against Defendant and respectfully requests that this Court:

A.      Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff under appropriate Federal Law;

8

B.    Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which unlawfully discriminates on the basis of sex;

C.    Order Defendant to make whole LORI SUTTON by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D.    Grant Plaintiff actual, consequential, compensatory, punitive and any other damages that the Court may deem appropriate against Defendant;

E.    Grant Plaintiff her attorney fees, costs, disbursements; and

F.    Grant Plaintiff such further relief as the Court deems necessary and proper in the public interest.

## COUNT III - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

43.    Paragraphs one (1) through twenty-three (23) are incorporated by reference as if fully set out herein.

44.    Plaintiff seeks respondeat superior liability against Defendant for the tortious conduct of management employees Dennis Law, Foreman, and Dan Murphy, Field Superintendent, as the alter egos of Defendant.

45.    Foreman Law and Field Superintendent Murphy have engaged in extreme and outrageous conduct in subjecting Plaintiff to an overt, unbridled, and malicious course of conduct designed to psychologically and emotionally abuse Plaintiff. Examples of such conduct have been detailed in the preceding paragraphs.

46.    Defendant, acting by and through their management employees, Foreman Law and Field Superintendent Murphy, intended to cause Plaintiff severe emotional distress, or knew that there was a high probability that Plaintiff would suffer such distress, when they subjected Plaintiff

9

to a course of conduct designed to psychologically and emotionally abuse Plaintiff.

47.     In their positions with Defendant, Foreman Law and Field Superintendent Murphy exercised a substantial degree of control over Plaintiff's terms and conditions of employment and abused their authority over Plaintiff by subjecting her to outrageous conduct.

48.     Plaintiff has suffered and continues to suffer extreme emotional distress as a direct and proximate result of Defendant's extreme and outrageous conduct.

49.     Defendant, acting by and through their management employees, Foreman Law and Field Superintendent Murphy, intentionally subjected Plaintiff to egregious and abusive treatment which Defendant knew would cause Plaintiff to suffer severe emotional distress.

50.     Plaintiff continues to suffer the severe emotional and psychological trauma inflicted upon her by Defendant and continues to struggle with the effects of Defendant's extreme and outrageous conduct.

51.     The aforementioned acts and omissions of Defendant constitutes intentional infliction of emotional distress, in violation of the laws of the State of Illinois.[1]

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, LORI SUTTON, prays for judgment against Defendant and respectfully requests that this court:

A.     Order Defendant to make whole LORI SUTTON by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

B.     Grant Plaintiff actual, consequential, compensatory, punitive and any other damages

---

[1]Despite the similar facts alleged in previous counts of this Complaint, Plaintiff's claim for intentional infliction of emotional distress will not be subject to preemption by the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/8-111(c), as Count II may be proven independent of the legal duties furnished by the IHRA. See Naeem v. McKesson Drug Co., 444 F.3d 593, 604 (7th Cir. 2006).

10

that the Court may deem appropriate against Defendant; and

C.    Grant Plaintiff such further relief as the Court deems necessary and proper in

the public interest.

## JURY TRIAL DEMAND

52.    Plaintiff requests a jury trial on all issues of fact and law raised by the allegations in

this Complaint.

Respectfully submitted,
LORI SUTTON, Plaintiff,

By:
Lisa Kane, Attorney for Plaintiff

LISA KANE & ASSOCIATES
Attorneys for Plaintiff
120 South LaSalle Street, Suite 1420
Chicago, IL 60603
(312) 606-0383
Attorney Code No. 06203093

## Verification

I, Lori Sutton, declare under penalty of perjury that the foregoing is true and correct.

Executed on ___Dec, 11___, 2007.

_____
Lori Sutton

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: Lori Sutton
1213 Runyan Drive
Lockport, IL 60441

From: **Chicago District Office
500 West Madison St
Suite 2800
Chicago, IL 60661**

[ ] *On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **440-2008-00361** | **Jacquelyn C. Gandy,
Investigator Support Asst** | **(312) 886-5976** |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*John P. Rowe*

John P. Rowe,
**District Director**

*12/5/2007*
*(Date Mailed)*

Enclosures(s)

cc:     **SKENDER CONSTRUCTION COMPANY**

DEC - 6 2007

Lisa Kane, Esq.
120 S. LaSalle, Suite 1420
Chicago, IL 60603

**CERTIFIED MAIL 7099 3400 0014 4054 5052**